**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Blythe Lynn VIGO and Ariel Nicholas Arenado, Defendants-Appellants.**

**No. 28404.**

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1970.

Rehearing Denied Feb. 3, 1971.

**1348**

Richard B. Bergstresser, Duval & Bergstresser, Miami, Fla., for Vigo.

Jerry Mosca, Max P. Engel, Miami, Fla., for Arenado.

Robert W. Rust, U. S. Atty., Jose E. Martinez, William C. White, Asst. U. S. Attys., Miami, Fla., for appellee.

Before TUTTLE, BELL and GOLD-BERG, Circuit Judges.

TUTTLE, Circuit Judge:

These two cases represent appeals from separate trials and judgments of conviction and sentences following a joint indictment of the two parties. Not only were the cases tried separately, but the points on appeal differ in such degree that the court will treat them separately here.

### THE VIGO CASE

There was very thin evidence connecting the appellant Vigo with a sale that was made, according to the indictment and proof in a separate case, by one Ariel Arenado to a government undercover agent of a quantity of cocaine. We do not reach the question of the sufficiency of the evidence, because we conclude that on the basis of cross examination of the appellant as to the conviction of her husband on a narcotics charge in a manner that was not truly impeaching of her testimony the judgment of conviction and her sentence must be reversed. Evidence at the trial revealed that appellant had driven a vehicle for a person who was proved to have made a sale to a government undercover agent. She claimed that she had no knowledge of the purpose of the trip or that she had any involvement in it. On cross examination, she claimed that she not only had no knowledge of narcotics but that she did not know of anyone who had been convicted of violating narcotic laws and who "dealt" with Mr. Arenado. The trial court permitted cross examination which elicited the fact that her husband had been convicted "of one count on possession and one count of illegal importation of heroin," and that he was a close friend of Mr. Arenado.[1]

---

1. This cross examination, which will later be discussed, was as follows:
   Q. Your testimony is that you know nothing about any cocaine, is that correct?
   A. I did not know anything about cocaine.
   Q. You didn't know Mr. Arenado dealt in cocaine?
   A. No, sir, I did not.

After the case had been submitted to the jury and after the jury has been deliberating for approximately forty-five minutes, they advised the court that they could not arrive at a verdict. The court then stated to them as follows:

"THE COURT: Gentlemen, I have received a note signed by the foreman of the jury, which reads as follows:

'Your Honor, we cannot reach a verdict.'

"Ladies and gentlemen of the jury, you have actually been deliberating about forty-five minutes and you have not possibly had time to comply with my instructions that you discuss with each other and listen to the views of each other with a disposition to accept the views of the others if the reasons that they advance are persuasive, based upon the evidence and not contrary to the Court's instructions on the law. It is impossible at this point, after such a short deliberation, for any juror, I believe, to be adamant in his opinion.

"As I told you, it is the essence of the jury system that each of you consider all of the evidence that is recalled, discuss it among yourselves and try to come to some opinion.

"I don't believe, frankly, that you have done it, because I don't think you have had time to do it.

"I am going to excuse you now. I am going to let you go home. But I am going to excuse you with the instructions I have given you, which are still in force and effect. I direct you to return here at nine o'clock tomorrow morning and commence your deliberations again. I just will not accept, within forty-five minutes, a statement from the jury that they can't arrive at a verdict in a case. You may be excused until nine o'clock tomorrow morning, at which time you will report here.

"And just as an additional caution to you, you may well be advised to bring with you tomorrow morning some night clothes and your toilet articles because, in my opinion, if I do not believe that there is an impossibility of reaching a verdict, I am going to send you to a hotel tomorrow night."

The jury returned on the following day and after resuming deliberations, at about nine o'clock returned a verdict of guilty at ten fifty-four A.M.

We deal first with the supplemental charge to the jury. The issue in this case, although it took some time to try it, was not really complicated. The question was whether the appellant was really a party to the conspiracy by her association with others who were convicted or pleaded guilty in other proceedings. It may well have been possible for the jurors to give adequate consideration within forty-five minutes to this rather narrow issue. However, we do not find that there was anything inherently wrong in the trial judge's charge to the effect that the jurors had not really had time enough to have arrived at adamant viewpoints that were not subject to modification. However, the rest of the charge raises a substantial question under the decisions of this court dealing with variations of the Allen charge.

Q. Do you know anything about heroin?

A. Oh, no, sir, I do not.

Q. You don't know anybody that has ever been convicted of heroin that deals with Mr. Arenado?

A. No, I do not. I do know about drugs, but I do not know anybody who deals with Mr. Arenado.

MR. MARTINEZ: May I approach the bench, your honor?

THE COURT: Yes, sir.

(Thereupon the sidebar conference was concluded, pursuant to which the following proceedings were had in open court:)

BY MR. MARTINEZ:

Q. You do remember, Miss Vigo, that your husband was convicted of one count on possession and one count of illegal importation of heroin, do you not?

A. Yes, I do know that.

Q. And that he is an associate of Mr. Arenado?

A. They are best friends, but he does not do anything like that with Mr. Arenado, I don't think.

This court, consistent with many others, has quite properly, we think, made a determined effort to impress upon the trial courts of this circuit the grave responsibilities resting upon a trial court when it seeks to use all or any part of the Allen charge. This court stated in Powell v. United States, 5 Cir., 1961, 297 F.2d 318:

> "It is implicit in the decisions of the Supreme Court dealing with the Allen case, e. g. Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 and Brasfield v. United States, (1926) 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, that the Fourth Circuit was correct in its recent holding [United States v. Rogers (1961), [4th Cir.,] 289 F.2d 433, 435, 437] 'that the Allen charge, itself, approaches ultimate permissible limits * * *' in handling situations similar to that facing the court below."

In his dissenting opinion in Huffman v. United States (5th Cir., 1962), 297 F.2d 754, 755, Chief Judge Brown, who had been a member of the court, together with the writer of this opinion in the Powell case, supra, expressed the view that the Allen charge was no longer proper for use in a criminal prosecution. His discussion is enlightening and has been persuasive to other judges of this court. See, for instance, the comments by Judge Wisdom as the author of the opinion in Green v. United States (5 Cir., 1962), 309 F.2d 852, fn. 3, page 854. However, in light of the decisions of this court, the Allen charge cannot be ruled out, except upon a hearing by the court en banc, for to do so would involve the overruling of many prior decisions of the court, including Huffman, supra.

Viewing the language used by the trial court in this particular instance, we conclude that it borders on the forbidden. However, we need not decide whether it falls on the near or far side of the line, in light of our decision on the other issue, which requires a reversal of the judgment of conviction. It is not likely that a similar charge will be occasioned in the event of a new trial.

The second point raised by the appellant on her appeal here relates to the cross examination by government counsel following her testimony on her own behalf. This testimony is fully outlined in footnote 1, supra. It will be noted that in explaining the reason for his asking the witness the questions government counsel stated to the court: "Out of an abundance of caution, I would proffer to the court that I intend to ask her whether or not her husband who was an associate of Arenado, was convicted of the sale and possession of heroin." The trial court may well have concluded from this statement that the government was intending to prove that her husband was "an associate of Arenado's" in the sale and possession of heroin. However, all the testimony produced was that although she said that she did not "know about anybody that has ever been convicted of heroin that deals with Mr. Arenado," the government then thought it had impeached her testimony by the following question: "You do remember, Mrs. Vigo, that your husband was convicted of one count on possession and one count of illegal importation of heroin, do you not?" and her answer, "Yes, I do know that," followed by the government's question, "And that he is an *associate* of Mr. Arenado?" (Emphasis added) and then her answer, "They are best friends, but he does not do anything like that with Mr. Arenado, I don't think."

We thus find that the government did not even cross examine Miss Vigo with respect to the precise point as to which she had testified. That is, that she did not "know about anybody that has ever been convicted of heroin that *deals* with Mr. Arenado." (Emphasis supplied). All the government proved was that her husband had been convicted as a heroin dealer, a fairly devastating bit of proof, but utterly irrelevant to the issue of her guilt or innocence, and that he was a good friend of Arenado, a fellow defendant in this case.

The government undertakes to justify this cross examination by stating, "The totality of the above only indicates the

transpiration of normal cross examination, which in this case goes only to the issue of whether the defendant was telling the truth. The defendant's veracity is always at issue when she chooses to testify in her own behalf. United States v. Skidmore, [7 Cir.] 123 F.2d 604 (1941)."

The difficulty with this argument is that the answer by Miss Vigo was in no way inconsistent with her direct examination that she didn't know about anybody that has ever been convicted with heroin who dealt with Mr. Arenado. The only testimony elicited was that her husband had been convicted on a heroin count and that he was one of Mr. Arenado's "best friends." Thus, the testimony was not relevant even for impeachment purposes. All it did was to prove that this defendant's husband had been convicted of a narcotics charge.

Of course, it is understood that generally when a defendant in a criminal case elects to take the stand and testify, he is subject to cross examination like any other witness. His credibility is, then, in issue. However, courts should always consider whether proof of other crimes by the defendant himself, introduced solely for the purpose of impeachment, as the trial courts always charge, is really more devastating to the defendant's case than is justified as a proper means of testing the credibility of the defendant as a witness in his own behalf. See Luck v. United States (1965), 121 U.S.App.D.C. 151, 348 F.2d 763. As the court says there, "There may well be * * * cases where the trial judge believes the effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last, of course, is a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." In the footnote following this text the court cites 1 Underhill Criminal Evidence, Section 163, at 301, Section 165, at 314 (5th Ed. 1956) which says:

"If, however, the question calls for an answer, which, though obstensibly in-

voked solely to aid the jury in estimating the credibility of the accused, may, by showing him guilty of other similar crimes, indirectly lead them to infer that he is guilty of the crime charged, the court may interfere in its discretion."

The footnote then called attention to the case of Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, where at page 480, of 335 U.S., at page 221 of 69 S.Ct. the court said; "Wide discretion [to permit this type of testimony] is accompanied by heavy responsibility on trial courts to protect the practice from any misuse."

We must bear in mind that the course of conduct discussed in the cases cited relates to testimony of prior convictions by the defendant himself. Here we are not even dealing with this type of testimony. We are dealing with proof of a prior conviction of the defendant's husband. We are simply dealing with the question of whether such damaging proof can be introduced by cross examining the defendant where neither the question nor the answer given upon cross examination is inconsistent in fact with anything previously testified to by the defendant and, thus, is not, in fact, relevant to the issue of the credibility of the defendant as a witness in her own behalf. We conclude that the permission by the trial court that these questions be asked was error.

Because of the two prejudicial errors discussed, the judgment as to Miss Vigo is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

### THE ARENADO CASE

After the conviction of appellant Arenado, the United States Supreme Court decided the case of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610. In that case, the court invalidated the presumption of knowledge of importation from bare possession of a small quantity of cocaine. This decision by the Supreme Court invalidates the conviction of Arenado on Counts I and II of the present indictment. Arenado was

also convicted under Counts III and V which charged him with having "purchased" cocaine not in or from the original stamped package in violation of 26 U.S.C. § 4704. The Turner decision invalidated the presumption that mere possession of unstamped narcotics is prima facie proof of violation of this section. The government concedes that this decision invalidates the convictions under Counts III and V.

Arenado was also convicted under Count IV which charged the defendants with violating 26 U.S.C. § 4705(a). This section was not affected by Turner. There was ample evidence to support the allegations charged against Arenado in Count IV that a sale or exchange to an undercover narcotics agent actually took place. The sentence of ten years as to Count IV imposed on Arenado was imposed to run concurrently with the ten year sentences imposed on Counts I and II and the five-year sentences imposed on Counts III and V of the indictment. Therefore, the invalidity of the convictions on Counts I, II, III and V does not affect the sentence meted out to Arenado on Count IV. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1956).

Arenado also complains of the refusal of the trial court to permit him to introduce evidence to the effect that he was acting as a volunteer informer for the Miami Police Department, with respect to efforts made to catch "Number One" in the local narcotics trade. The proffer of testimony which he made related only to proof that he had in the past furnished to a Lt. Stephens information relating to other possible crimes in the Miami area. No testimony was offered to indicate that he was, within the knowledge of the federal officials or even the state officials, acting as an informer with respect to the particular crime of which he was tried and convicted. We find no error in the exclusion by the trial court of this evidence.

The judgment and sentences of Arenado on Counts I, II, III and V of the indictment are reversed and vacated. His judgment and sentence on Count IV is affirmed.

The judgments and sentence against Blythe Lynn Vigo on Counts I, II and III are vacated and set aside by reason of the Turner decision and her judgment and sentence under Count IV is reversed and the case is remanded for further proceedings not inconsistent with the opinion dealing with her case.