Revised January 7, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20724
_____

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

JOYCE ELAINE POLASEK,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

December 11, 1998

Before KING, GARWOOD and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Joyce Elaine Polasek appeals her conviction and sentence for conspiracy, making false statements relating to mileage registered on odometers, mail fraud, and utterance and possession of counterfeited and forged securities. We reverse.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Joyce Elaine Polasek operated a service in Houston, Texas that transferred motor vehicle title and registration documents from automobile dealers to car purchasers. An indictment filed on

December 16, 1996 in the Southern District of Texas charged her with altering the mileage on titles and related documents for vehicles sold at Montgomery Motors Express, a Houston used car dealership. Specifically, Count One of the indictment accused Polasek of conspiracy to violate the laws of the United States, Counts Two through Twelve of false odometer certification, Counts Thirteen through Nineteen of mail fraud, and Counts Twenty through Twenty-four of making, uttering, and possessing forged securities. Polasek pleaded not guilty to all twenty-four counts.

At trial, a number of individuals formerly associated with Montgomery Motors Express testified that they had seen Polasek altering titles or heard her bragging that she had done so. John Richard Hubert, who had owned the dealership during Polasek's tenure there, stated that he rolled back odometers on the cars he sold and that he hired Polasek, an independent contractor, to alter the paperwork associated with such vehicles.[1] He also claimed that he witnessed Polasek scraping off mileage numbers on titles. Similarly, Scott Vaughan, a car buyer for Montgomery Motors, told the jury that he saw Polasek altering a title reflecting mileage in excess of 100,000 miles by changing the first digit to the letter "A." Vaughan recounted that Polasek even asked him how the alteration looked. He described Polasek's title work as "sloppy"

---

[1] Hubert pleaded guilty to odometer fraud before Polasek's trial. He was sentenced to thirty-six months in prison, three years of supervised release, and a $15,000.00 fine.

and "ridiculous," observing that some of the titles appeared as though they had been altered five or ten times. Gregory Hall, a title clerk for Montgomery Motors in the late 1980s and early 1990s, testified that he saw Polasek alter a title by scratching it with a pick. Once, while delivering a title to the courthouse as a favor to Polasek, he noticed that the old odometer numbers had been "carved" out of the paper; when the courthouse clerk subsequently rejected the title, Polasek became angry and insisted on seeing the clerk's supervisor. William David Bolton, a closer for the dealership, testified that Polasek had told him that she had found a better way to alter titles using stencils and typewriter correction tape and described how she demonstrated her new technique. According to Bolton, Polasek kept a number of title-altering instruments, including colored pens and pencils, erasers, and a tool resembling a dental pick, in a special pouch. He also claimed to have once seen her scratching at the odometer reading on a title with the pick. Finally, Lisa Walling testified that she worked for Polasek at Montgomery Motors for a short while and that some of Polasek's titles looked as though numbers in the odometer box had been changed or erased. Walling also told the jury that she had seen Polasek alter a title by erasing something from the odometer box and that, on other occasions, she had observed Polasek using a light to trace a signature from one document to another. Walling testified further that Polasek had numerous titles sent to Walling's address rather than directly to

3

the car buyers.

In addition to this eyewitness testimony, the government offered evidence of bad acts outside the scope of the indictment. National Highway Traffic Safety Administration Special Agent Robert Eppes testified that early in 1990, in the course of a Nebraska odometer fraud investigation that turned up documents bearing her signature, he warned Polasek against submitting titles with false odometer statements and obtaining duplicate vehicle titles, which are often used for the purpose of odometer fraud. In addition, the prosecution showed that Polasek had been convicted in the United States District Court for the District of Nebraska for conspiracy to transport in interstate commerce false motor vehicle titles. It also introduced a portion of her petition to enter a guilty plea in that case, including her statement that "I helped Janzen and Brown get certified copies of automobile titles so they could turn the cars back on the odometers." After the admission of this evidence, the district court instructed the jury that it could consider the evidence of acts outside the scope of the indictment only for limited purposes.

Polasek took the stand in her own defense. She admitted to the Nebraska conviction and acknowledged that her signature appeared on various government exhibits but insisted that she neither altered titles at Montgomery Motors nor knew of any odometer tampering during most of the time that she worked there. Her testimony contradicted that of several government witnesses,

4

each of whom she accused of lying for various reasons. She blamed a "little short fat" man for the altered titles, claiming that she left Montgomery Motors upon discovering the alterations but returned after receiving false assurances that odometers no longer were being altered. No other witness was asked about or testified to the existence of the short, fat man.

On cross-examination, Polasek admitted that she understood the logistics of odometer tampering and knew that titles had to be altered in such schemes. She acknowledged telling the Federal Bureau of Investigation that she was aware of another dealership that rolled back odometers but nevertheless did their title work. She also admitted falsely listing Walling's address on titles. She denied, however, that she had admitted to law enforcement personnel that she had participated in odometer tampering for various other dealers; when asked whether she was aware that other dealers for whom she had worked had been convicted for odometer fraud, she replied that she was not. Specifically, she acknowledged that she had done work for Kenny Smith, but denied knowledge of his conviction for odometer tampering; acknowledged that she had done work for Dwayne Hutchins, but denied knowledge of his odometer tampering conviction; acknowledged that she had worked for William Witlow, but denied knowledge of whether he had altered odometers; denied both doing any work for Travis Barnes and knowledge of any convictions related to him; acknowledged doing title work for Danny Coker, but denied knowledge that he had been convicted for odometer

5

tampering; and acknowledged that she had worked in Mississippi for a company named S & S Auto, but denied knowledge of any convictions for odometer tampering related to that establishment.

In rebuttal, the government recalled Special Agent Eppes. Eppes testified that he had been investigating Lebanon, Missouri car dealers, that Polasek had obtained some of the titles processed by these dealers, and that this led him to speak with Polasek. According to Eppes, Polasek admitted that her signature appeared on one document, but when he told her it had been fraudulently obtained, she retorted, "You can't prove that." Eppes testified again, as he had on direct examination, that he warned Polasek to stop handling altered documents and getting duplicate titles for dealers involved in odometer fraud, but that he succeeded only in angering her. The prosecutor then asked Eppes specific questions about each of the car dealers with whom Polasek had been associated:

```
Q  Now, you heard Mr. Stearn ask the Defendant about a
   number of people that the Defendant did business with?
A  Yes.
Q  Are you familiar with a man by the name of Coker?
A  Yes.
Q  Who is Mr. Coker?
A  Dan Gallant Coker (phonetic spelling).
Q  Did you, during the course of your investigation, find
   paperwork handled by the Defendant?
A  Yes.
MR. ROGERS:  Your Honor, this is an extraneous matter, and
             it's irrelevant to this case.
THE COURT:  Overruled.
MR. ROGERS:  Please note our exception.
THE WITNESS:  Yes, I did.
BY MR. MARTINEZ:
Q  What happened to Mr. Coker?
```

6

A  Mr. Coker was convicted.
Q  You mentioned a Mr. Witlow?
A  Yes, I'm familiar with Mr. William Witlow.
Q  Did you do an investigation of Mr. Witlow?
A  Yes, I did.
Q  And during the course of that investigation, did you find paper handled by the Defendant?
A  During the course of that investigation, I did.
Q  What happened with Mr. Witlow?
A  Mr. Witlow was convicted.
Q  And again, what was he convicted for?
A  Odometer fraud.
Q  Would that be the same for Mr. Coker?
A  Yes.
Q  What about a man by the name of Travis Barnes, did you investigate him?
A  Yes, I did.
Q  And during the course of your investigation, did you find paperwork?  When I say, "paperwork," I'm talking about odometers that had been tampered with in that investigation.
A  Yes, we did.
Q  And did you--who handled some of the paper in that investigation?
A  Ms. Polasek.
Q  What happened to Travis Barnes?  Was he prosecuted?
A  Yes, he was.
Q  And what was he convicted for?
A  Odometer fraud.
Q  Who is Dennison Barnes?
A  Dennison Barnes is the son of Travis Barnes.
Q  Was he also investigated?
A  Yes, he was.
Q  Was he also convicted?
A  Yes, he was.
Q  For what?
A  Odometer fraud.
Q  Again, did you see paperwork by the Defendant in that prosecution?
A  I would like to reiterate on all of those that you mentioned that there were interviews done with them in which they told me that and documents were seen handled by Ms. Polasek.
MR. ROGERS:  Judge, I object.  That is hearsay.
THE COURT:  Sustained.
BY MR. MARTINEZ:
Q  The question is did you see documents that were handled by the Defendant?
A  Not by Mr. Dennison Barnes, no.

7

Q  Are there any other persons whom you have investigated that have been convicted for odometer tampering where you saw paperwork, odometer paperwork, titles, that were handled by the Defendant?

A  Yes.

Q  Can you please tell the jury those folks.

MR. ROGERS:  Your Honor, that's irrelevant.  We would object to all that as just extraneous offense matters.

THE COURT:  Overruled.

MR. ROGERS:  It doesn't prove that she had anything to do with altering anything or had knowledge of it.

THE COURT:  Overruled.

MR. ROGERS:  Note our exception.

THE WITNESS:  Yes, I have.

BY MR. MARTINEZ:

Q  Can you tell the jury who those people were or what dealerships they owned or were involved with?

A  Mr. Ken Smith operating as KNS Auto Sales, Auto Mart, and Quality Auto Sales, Lebanon, Missouri.

Q  Who else?

A  Mr. Larry Scott Bennett.  His conviction was not--it was related to our odometer case but his charge was not odometer fraud.

Q  What was he convicted for?

A  I don't know the exact statute.  It was a Texas state statute for shooting into a building with the intent to harm someone.

MR. ROGERS: Your Honor, this is all totally irrelevant.

THE COURT: Sustained.  The jury is instructed to disregard the last answer.

Q  The question is--

MR. ROGERS:  Your Honor, in light of the harmful nature of all this, I would move for a mistrial.

THE COURT:  Your motion is denied.

MR. ROGERS:  Please note our exception.

BY MR. MARTINEZ:

Q  The question, Mr. Eppes, is the investigations related only to the work you do, that is, odometer-related fraud, was that last case that you spoke of related--that individual that you investigated related to odometer tampering?

A  That investigation and that person was related to the odometer fraud, yes.

Q  Is there anybody else that the Defendant did odometer work for that were prosecuted and convicted?

A  Yes.  Mr. Dwayne Hutchins.

Q  Who is Mr. Dwayne Hutchins?

A  Doing business as H & H Auto Sales, Dallas, Texas.

Q  And what was he investigated for?

8

```
A    Odometer fraud.
Q    Was he convicted?
A    Yes.
Q    Was that federal or state?
A    Federal.
Q    And again, did you, during the course of that
     investigation, find paperwork, title documents, that were
     tampered with and handled by the Defendant?
A    Yes.
```

On cross-examination, Eppes admitted that, except for her Nebraska conviction, Polasek had not been charged or convicted in connection with any of the investigations about which he had testified.

During the government's rebuttal closing argument, the prosecutor emphasized the fact that many of Polasek's former business associates had been convicted of odometer fraud:

> Defense counsel would have you believe that it's irrelevant that the Defendant associated with a number of people that have been convicted. I submit to you that that is a lot to be said about intent and motive and knowledge. A person who is working in the industry for that long, there is no coincidence whatsoever, whatsoever, that these folks got convicted; and that would show that she had some intent or knowledge.
> She knew these folks for many years. How could she not know in the case of Montgomery Motors where she said, "I didn't know anything was going on there. When I found out, I was out of there"? That doesn't make any sense. She had been in the industry how long? She did it for a number of years. For a number of people to get convicted?

Polasek did not object to this line of argument.

The jury convicted Polasek of conspiracy to violate the laws of the United States, false odometer certification, mail fraud, and making, uttering, and possessing forged securities, in violation of 18 U.S.C. § 371, 49 U.S.C. § 32703, 18 U.S.C. § 1341, and 18 U.S.C. § 531, respectively. The district court sentenced Polasek to

9

concurrent terms of imprisonment of 108 months on the securities counts, sixty months on the conspiracy and mail fraud counts, and thirty-six months on the false odometer certification counts. In addition, the court imposed a three-year term of supervised release. Polasek appeals both her conviction and her sentence.

## II. STANDARD OF REVIEW

We review a district court's evidentiary rulings under an abuse-of-discretion standard so long as the party challenging the ruling makes a timely objection to the admission of the evidence. See United States v. Westmoreland, 841 F.2d 572, 578 (5th Cir. 1988). Otherwise, we apply the plain error standard. See United States v. Burton, 126 F.3d 666, 671 (5th Cir. 1997).

We must therefore determine whether Polasek adequately objected to Eppes's testimony about the convictions of her former business associates. Federal Rule of Evidence 103(a)(1) prohibits predicating error on a ruling admitting evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." FED. R. EVID. 103(a)(1). A loosely formulated and imprecise objection will not preserve error. See United States v. Waldrip, 981 F.2d 799, 804 (5th Cir. 1993). Rather, a trial court judge must be fully apprised of the grounds of an objection. See United States v. Jimenez Lopez, 873 F.2d 769, 773 (5th Cir. 1989).

Polasek's objection that "[i]t doesn't prove that she had anything to do with altering anything or had knowledge of it" put the court on notice that the fact that Polasek had done title work for individuals later convicted of odometer fraud was, essentially, a suggestion that she was guilty by association. Polasek was contending that her relationship with individuals later convicted of fraud did not, without more, show any bad acts or guilty knowledge on her part. As a result, it could only constitute guilt by association evidence, which is prohibited because "[t]hat one is married to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge." United States v. Forrest, 620 F.2d 446, 451 (5th Cir. 1980). Polasek's situation differs markedly from those cases in which we have held that a generic objection does not put the court on notice that the defendant is objecting on specific grounds. See United States v. Berry, 977 F.2d 915, 918 (5th Cir. 1992); United States v. Martinez, 962 F.2d 1161, 1166 (5th Cir. 1992). Polasek did not simply assert that she objected to Eppes's testimony; she articulated reasons that go to the very heart of our ban on guilt by association evidence. Nor is this case analogous to those situations in which a party objects on one ground at trial and attempts to rely on a different ground on appeal. See United States v. Musa, 45 F.3d 922, 924 & n.5 (5th Cir. 1995); United States v. Heath, 970 F.2d 1397, 1407 (5th Cir. 1992). Polasek protested at trial that Eppes's testimony showed

11

only her association with persons later convicted of odometer fraud, and she makes the same claim now. While perhaps not as eloquent as she could have been, Polasek pointed out that the evidence of her associates' convictions showed nothing about her guilt of the crime charged or of any other bad act that might have been admissible under Rule 404(b), and thus constituted no more or less than proof that some of her friends were convicts. Accordingly, we find that she made a timely objection and review the district court's admission of the evidence of her associates' convictions for abuse of discretion.

## III. DISCUSSION

It is well established in this circuit that the government may not attempt to prove a defendant's guilt by showing that she associates with "unsavory characters." United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. Unit A June 1981) (finding plain error where the prosecutor asked the defendant whether he associated with felons). Accordingly, we found error in United States v. Parada-Talamantes, 32 F.3d 168, 170 (5th Cir. 1994), where the government showed that the defendant's brother had sold the co-defendant a van with secret compartments for smuggling marijuana, and in United States v. Romo, 669 F.2d 285, 288-89 (5th Cir. 1982), where the prosecution introduced evidence that a defendant on trial for drug offenses associated with drug dealers. In United States v. Labarbera, 581 F.2d 107, 109 (5th Cir. 1978),

12

we held improper the cross-examination of a defendant, charged with a gun law violation, concerning the arrest of his son for a similar offense. And in <u>United States v. Vigo</u>, 435 F.2d 1347, 1350-51 (5th Cir. 1970), we held the admission of evidence that the defendant's husband had been convicted of selling and possessing heroin to be error.[2]

---

[2] We have not yet explicitly determined what statute or rule of evidence guilt by association evidence violates. Many of our sister circuits, however, have concluded that such evidence is irrelevant under Federal Rules of Evidence 401 and 402 or unduly prejudicial under Rule 403. See <u>United States v. Johnson</u>, 934 F.2d 936, 942-43 (8th Cir. 1991) (analyzing the defendant's guilt by association argument under Rules 401 and 403); <u>United States v. St. Michael's Credit Union</u>, 880 F.2d 579, 600-02 (1st Cir. 1989) (applying Rules 401, 402, and 403 in evaluating the defendant's challenge to testimony about her father's alleged gambling activity); <u>United States v. Cunningham</u>, 804 F.2d 58, 61-62 (6th Cir. 1986) (finding evidence that defendants' relative had been convicted of the same crime for which they were on trial, which presented a "clear danger of guilt by association," was irrelevant under Rule 401); <u>United States v. Peters</u>, 791 F.2d 1270, 1307-08 (7th Cir. 1986) (stating that the defendant challenged guilt by association evidence as unduly prejudicial under Rule 403 and analyzing the allegedly erroneous admission of that evidence under this rule); <u>United States v. Khan</u>, 787 F.2d 28, 34 (2d Cir. 1986) (recounting that the "defendant contends that the trial judge should have excluded the evidence under [Rule] 403 on the ground that its probative value was substantially outweighed by the danger of unfair prejudice, because it 'subliminally appeal[ed] to guilt by association and potentially to prejudice against foreigners'" but ultimately concluding that the district court did not abuse its discretion in overruling the Rule 403 objection) (quoting defendant-appellant's brief); <u>United States v. Hernandez</u>, 780 F.2d 113, 118 (D.C. Cir. 1986) (holding that the challenged evidence violated Rule 403 because it was only a "slightly refined version of guilt by association," not legitimately admissible proof).

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 prohibits the admission of irrelevant evidence. See FED. R. EVID. 402. Rule 403 provides that relevant evidence nonetheless may

13

Similarly, Eppes's statements that Polasek had done title work for persons later convicted of odometer fraud showed only that she associated with criminals. It was therefore inadmissible guilt by association evidence.

The government attempts to justify Eppes's testimony as proper extrinsic offense evidence. Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
> of mistake or accident . . . .

FED. R. EVID. 404(b). That Polasek's former business associates had been convicted of odometer fraud, the government claims, was evidence that Polasek herself had altered titles or otherwise facilitated odometer tampering through manipulating paperwork.

---

be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Accordingly, there are two arguments against guilt by association evidence: first, that it is not relevant as that term is defined in Rule 401 and hence is inadmissible under Rule 402, and second, that even if it is relevant, it is unduly prejudicial and excludible under Rule 403. Polasek's associates' convictions are simply irrelevant to her case. The government never demonstrated that Polasek participated in or even knew of the schemes for which the associates were convicted. Even assuming that the evidence was relevant for some purpose, its prejudicial effect substantially outweighed its probative value: It altogether failed to prove any wrongdoing on Polasek's part but insidiously linked her with criminals in such a way that the jury might have concluded, as the government argued in its closing argument, that it was no coincidence that many of her associates had been convicted of the crime for which she was on trial.

14

Although Polasek was not charged with these incidents, such other crimes were admissible to show knowledge and intent in order to rebut Polasek's contention that she neither knew how to further odometer fraud nor had the intent to do so at Montgomery Motors. Therefore, the government insists, the proof of Polasek's associates' convictions was qualitatively different from that in Singleterry, Parada-Talamantes, Romo, and Vigo, in which the prosecution merely showed that the defendant knew or was related to criminals. We disagree. At trial, the government failed to demonstrate that Polasek in fact falsified titles or committed any other crimes in connection with the convicted associates.[3] The prosecutor asked only whether Agent Eppes had found any paperwork done by Polasek among the papers of her convicted associates;

---

[3] We acknowledge that at the end of his rebuttal examination of Agent Eppes, the prosecutor asked whether Eppes had, during his investigation of Dwayne Hutchins, found titles "tampered with and handled by" Polasek, to which Eppes replied, "Yes." At all other times, however, the prosecutor asked only whether Polasek had "handled" paperwork for the convicted individuals. Even if the last question was proper 404(b) evidence that Polasek had altered titles for Hutchins, the others clearly asked only whether Polasek had worked for persons convicted of odometer fraud. We also note that at one point during Eppes's rebuttal testimony, the prosecutor asked whether Eppes found "paperwork" in connection with his investigation of Travis Barnes, and added: "When I say 'paperwork,' I'm talking about odometers that had been tampered with in that investigation." Eppes answered that some of the "paper" had been "handled" by Polasek. We recognize that this testimony conceivably could be understood as stating that Polasek altered documents for Barnes. We find this interpretation something of a stretch, however, especially since the prosecutor never explicitly asked whether Polasek altered documents and almost invariably phrased his questions as whether she had "handled" paperwork for the convicted car dealers.

indeed, he did not even inquire whether the paperwork she had handled had been altered. While evidence that Polasek previously had committed odometer fraud might have been admissible to show knowledge and intent, the proof adduced by the government at trial simply did not demonstrate wrongdoing on Polasek's part. Rather, it established only that she had done title work for persons who had later been convicted of odometer fraud. Thus, this case does not differ from those Polasek cites.

The government also argues that even if introducing the convictions of Polasek's associates was error, it is not reversible error because the evidence against Polasek was overwhelming. See United States v. Escamilla, 666 F.2d 126, 128 (5th Cir. 1982). This is essentially an argument that the admission of Polasek's associates' convictions constituted harmless error. Even if the district court erred in its evidentiary rulings, such error can be excused if it was harmless. See United States v. Lowery, 135 F.3d 957, 959 (5th Cir. 1998). A nonconstitutional trial error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)) (internal quotation marks omitted); see United States v. Sanchez-Sotelo, 8 F.3d 202, 210 (5th Cir. 1993) (stating that in order to reverse a conviction on the basis of an evidentiary error, the appellate court must find a "significant possibility that the testimony had a substantial impact on the jury") (quoting United States v. Cain,

16

587 F.2d 678, 682 (5th Cir. 1979)) (internal quotation marks omitted).

In support of its contention that the evidence of Polasek's guilt was overwhelming and that her associates' convictions could have had no effect on the jury's verdict, the government points out that five witnesses testified either that they saw Polasek alter titles, that Polasek bragged about falsifying titles, or both. The prosecution further contends that the cases in which guilt by association evidence was found to be reversible error involved circumstantial or weak evidence against the defendant. We do not agree that the guilt by association evidence in this case was harmless.

First, the cases in which the prosecution's proof was found to be "overwhelming" involved situations where the defendant's guilt was established by undercover government agents or informers acting with the defendant. See Westmoreland, 841 F.2d at 580 (finding "overwhelming" tape recordings of the defendant discussing a kickback scheme with an undercover government agent and laughingly accepting his money); United States v. Blalock, 564 F.2d 1180, 1182 (5th Cir. 1977) (finding evidence of guilt overwhelming where an informer testified as to the defendant's active participation in a drug smuggling scheme and government agents saw him and his co-defendant pick up smuggled drugs); see also United States v. Echavarria-Olarte, 904 F.2d 1391, 1399 (9th Cir. 1990) (refusing to reverse where defendant neither challenged undercover agent's

17

testimony that he had participated in a drug smuggling conspiracy with the defendant nor explained why, as he claimed in his defense, he would want to pretend to be a smuggler). Although the government introduced evidence that Polasek previously had been convicted of odometer fraud and that Agent Eppes had warned her not to submit falsified titles, the only direct evidence against Polasek was the testimony of five Montgomery Motors co-workers. One of these already had been convicted for his role in the odometer fraud scheme, and some of the others admitted to potentially felonious conduct in connection with their jobs at the dealership. The defendant vigorously challenged their credibility at trial. We do not wish to imply, of course, that guilt by association evidence is always harmful where the only evidence against the defendant is accomplice testimony, or that evidence of guilt can never be overwhelming unless government agents or informers testify that they observed the defendant committing a crime. Rather, we simply note that the evidence against Polasek, while strong, is perhaps not "overwhelming."

This case is also distinguishable from United States v. MMR Corp., 907 F.2d 489, 501-02 (5th Cir. 1990), where we found evidence that the defendant corporation's business associates and alleged co-conspirators had been charged with bid rigging harmless where it was largely cumulative of properly admitted evidence that they participated in a bid rigging conspiracy. In contrast, the evidence of Polasek's associates' convictions was not cumulative of

18

any other evidence presented at trial. Moreover, in <u>MMR</u>, the district court carefully prohibited any evidence of the disposition of the charges in an effort to tailor the evidence to the object of its offer, that the alleged co-conspirators had become "preferred clients" of the government. <u>Id.</u> That was not the case here, where the testimony included statements that Polasek's associates had been convicted and was not tailored to any legitimate purpose.[4]

More important, we find that the guilt by association evidence likely had substantial impact on the jury's verdict as a result of the emphasis the government placed upon it. As a preliminary matter, we note that we repeatedly have characterized guilt by association evidence as "highly prejudicial," <u>Parada-Talamantes</u>, 32 F.3d at 170; <u>Romo</u>, 669 F.2d at 288; <u>Labarbera</u>, 581 F.2d at 109, and "damaging," <u>Vigo</u>, 435 F.2d at 1351. We must evaluate the admission of such evidence on a case-by-case basis, however. <u>See</u> <u>United States v. Howell</u>, 664 F.2d 101, 106 n.4 (5th Cir. Unit B Dec. 1981). One relevant consideration, of course, is the amount of time spent on the guilt by association evidence. <u>See</u> <u>Westmoreland</u>, 841 F.2d at 579 (finding no prejudicial impact in part because references to the defendant's guilty associates did not "permeate

---

[4] One could argue, of course, that the evidence of Polasek's associates' convictions was tailored to rebut her claim that she did not know that certain car dealers for whom she had worked had been convicted of odometer fraud. This argument lacks merit, however. While Eppes's testimony shows that Polasek's associates had in fact been convicted, it in no way demonstrates her knowledge of that fact.

the record"). Although the challenged evidence in this case took up only six transcript pages of a four-volume trial transcript, it constituted most of Agent Eppes's rebuttal testimony, and the government methodically elicited information about each target of Eppes's investigation, whether he had found paperwork done by Polasek, whether the target was prosecuted, whether he was convicted, and what for. Furthermore, the prosecutor highlighted the extraneous convictions during its closing rebuttal argument, telling the jury that Polasek must have known about and participated in the Montgomery Motors scheme because she had worked for dealers convicted of odometer fraud in the past. This insistence that the defendant's associates' convictions somehow showed her guilt was thus the last thing the jury heard before retiring to deliberate. Given the totality of the circumstances, we find that this blatant appeal to guilt by association was not harmless. We must therefore reverse Polasek's conviction. Because we reverse on this issue, we need not reach Polasek's other challenges to her conviction and sentence.

## IV. CONCLUSION

For the reasons given above, we REVERSE defendant-appellant's conviction.

20