IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-10761

_____

JAY SANDON COOPER,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, by and through its agent
Commissioner of Internal Revenue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 3:06-CV-1737-D

_____

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Jay Cooper sued the United States to obtain a tax refund. The district court granted summary judgment to the government, and we affirm.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Cooper filed his Form 1040 ("1040") with the Internal Revenue Service ("IRS") for the year 2000, listing himself as "single," although he was notSSat least not yet. He and his wife, Linda, were only separated; they divorced a couple of months after Cooper filed his 1040. The state court assigned various debts as part of its judgment of divorce, but Linda's tax liability was not assigned to Cooper.

In his 1040, Cooper reported approximately $32,000 of taxable income, consisting of $61,424 of wage income; $19,009 in operating losses; a $4,400 standard deduction; and a $5,600 standard exemption. The tax owed was $7,195 but was offset by $7,605 of withheld income and a $500 child tax credit. The result was a $910 refund.

In March 2004, Cooper filed an amended 1040 for the year 2000, asking for a refund of $6,695 because he was married during that tax year, so half of his wage income should have been attributed to Linda under Texas's community law doctrine, meaning that his tax liability should have been lower. Cooper, however, did not recognize any of Linda's earnings in his amended 1040, and he claimed total credit for the operating losses and withheld income.

The IRS disallowed the refund, citing 26 U.S.C. § 66(b).[1] Cooper unsuccessfully pursued his administrative remedies, then sued. The government moved for summary judgment on two alternate bases. The first was the same § 66(b) ground. The court, however, found genuine issues of material fact as to whether Cooper had notified Linda of his 2000 wages. The secondSSnever raised

---

[1] 26 U.S.C. § 66(b) ("The Secretary may disallow the benefits of any community property law to any taxpayer with respect to any income if such taxpayer acted as if solely entitled to such income and failed to notify the taxpayer's spouse before the due date (including extensions) for filing the return for the taxable year in which the income was derived of the nature and amount of such income.").

by the government in the IRS proceedingsSSwas that tax debts incurred by either spouse during marriage in community property states such as Texas are presumed to be community debts and thus may be satisfied by community assets. Because Cooper's 2000 tax obligation was a community debt, the court ruled that the government could satisfy the debt by means of community property, namely Cooper's withheld income.

## II.

We review a summary judgment de novo. Guillory v. Domtar Indus. Inc., 95 F.3d 1320, 1326 (5th Cir. 1996). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response mustSSby affidavits or as otherwise provided in this ruleSSset out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2) (as amended eff. Dec. 1, 2007).

## III.

Proceeding pro se, Cooper claims that the district court erred when it accepted an argument at summary judgment not raised in the IRS's proceedings. He argues first that the court acted beyond its subject matter jurisdiction and second that the court violated his constitutional rights. Neither argument is persuasive. As to the first, the court had jurisdiction to consider the newly raised contention. The second argument was forfeited, and Cooper cannot show that the court committed plain error in failing to recognize his supposed constitutional claims.

Citing In re McCloy, 296 F.3d 370, 373 (5th Cir. 2002), Cooper contends that the court acted unlawfully when it accepted the government's new theory. He argues further that his objection goes to subject matter jurisdiction and thus cannot be forfeited. Although the proposition that jurisdictional questions can-

not be set aside is axiomatic, it is also inapt: Merely saying an argument is jurisdictional does not make it so. The relevant statute broadly states that the federal courts have jurisdiction to hear "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been errone-ously or illegally assessed or collected," 28 U.S.C. § 1346(a)(1), and we are un-aware of any statute that limits the court's ability to decide tax-refund cases on grounds other than those raised in the administrative process.[2]

Moreover, precedent—consistent with § 1346(a)(1)'s focus on illegality— suggests that the district court did not act ultra vires. There is a "presumption . . . that taxes paid are rightly collected upon assessments correctly made by the [IRS], and in a suit to recover them the burden rests upon the taxpayer to prove all facts necessary to establish the illegality of the collection."[3] Thus, the ulti-mate question that the district court was called on to answer was whether this collection of taxes and the government's refusal to return claimed money were

---

[2] Cooper cites Laing v. United States, 423 U.S. 161, 165 n.4 (1976), to support his posi-tion that the administrative process is jurisdictional, but there the Court merely noted that deficiency notices are jurisdictional in that without first receiving one, a taxpayer cannot file "suit in the Tax Court for redetermination of his tax liability." That case says nothing about the jurisdiction of the federal courts over tax refund claims.

Cooper likewise cites sundry cases establishing the unremarkable proposition that if Congress has created administrative procedures to address a particular problem, a plaintiff must exhaust those procedures before suit is permissible in federal court. See, e.g., Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411 (1965). That is true but also be-side the point, because these cases are silent on the question whether a district court lacks jur-isdiction to accept an argument that the government—not the taxpayer—did not reference in its own internal proceedings.

In the "constitutional error" section of his brief, Cooper also cites Treasury Regulation § 301.6402-2(b)(1), United States v. McFerrin, 492 F. Supp. 2d 695 (S.D. Tex. 2007), and Lockheed Martin Corp. v. United States, 210 F.3d 1366 (Fed. Cir. 2000). These authorities are not on point; they merely show that a taxpayer is required to set forth sufficient legal and fac-tual grounds to support his refund claim.

[3] Sherwin-Williams Co. v. United States, 403 F.3d 793, 796 (6th Cir. 2005) (quoting Niles Bement Pond Co. v. United States, 281 U.S. 357, 361 (1930)); see also King v. United States, 641 F.2d 253, 259 (5th Cir. Unit B Mar. 1981).

lawful. There is no reason why that determination of legality must be based on grounds stated by the IRS in its internal proceedings; just because the IRS was (arguably) wrong in its reasoning does not necessarily mean that Cooper was right as to illegality, the issue that Congress placed in the federal courts for final determination.[4] The district court was within its jurisdiction to consider and accept the government's newly-raised argument.

Cooper also offers another argument for why the district court could not rule as it did: The Constitution forbids it. That novel contention, involving a hodgepodge of constitutional clauses (both real and imagined) and cases of varying repute,[5] was not properly raised in the district court.

In his response to the motion for summary judgmentSSin fact, in the same paragraph in which he objected to the government's supposed failure to abide by a local rule relating to the motion's formattingSSCooper mentioned that he also "object[ed] to Defendant raising, for the first time, new reasons to deny Plaintiff's claim for refund that were not asserted in the administrative proceedings." Not only did Cooper fail to cite the Constitution or even a single case to support his objection, he did not offer any basis at all. The objection was therefore not adequately presented to the district court, and insofar as his claimed error does

---

[4] This view finds support in King, 641 F.2d at 259, in which we held that "the rule in the Fifth Circuit . . . in a tax refund suit . . . is that a shift in theory by the government before trial does not shift the burden of proof," and "[i]f a change in theory presents undue hardship to the taxpayer, it is within the discretion of the trial judge to continue the case." Although King is not directly on point, it is instructive. There the IRS presented one theory during the administrative process, discarded that theory, then presented and discarded a second theory during the administrative process, then offered a third theory; before trial, however, the government reverted to the first theory. See id. at 258; id. at 270 (Fay, J., dissenting). Thus, unlike the situation in this case, the theory relied on by the government at trial was at least raised in the administrative process, but, importantly, it was not the theory relied on by the IRS at the conclusion of its internal proceedings. Nonetheless, we affirmed, because "[i]f the deficiency was appropriate under any theory, the assessment must be sustained." Id. at 259.

[5] Compare Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) with Dred Scott v. Sandford, 60 U.S. 393 (1856), two cases cited by Cooper.

not implicate the court's subject matter jurisdiction, it is consequently forfeited.[6]

A district court is entitled to know why a party objects. When a party fails to offer at least some cogent explanation for an objection, any claimed error is forfeited.[7] Where an argument has been forfeited, we address it only under "exceptional circumstances." Crawford v. Falcon Drilling Co., 131 F.3d 1120, 1123 (5th Cir. 1997). "[O]ur Court has adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review," id., by which "we must determine (1) if there was error, (2) if that error was plain, (3) if the error affects substantial rights, and (4) whether allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings," id. at 1124 (emphasis added). The test is conjunctive, meaning that before we can reverse, all four prongs must be met.

The court did not plainly err, because the errorSSassuming the dubious proposition that it even was even errorSSwas not plain. It is a question of first impression in this circuit whether the district court's consideration of the government's newly raised argument violated the Tenth Amendment, Due Process Clause, or "the substantive-Due Process Clause [sic]," and Cooper's argument is far from intuitive. Under such circumstances, any assumed error was not plain.[8]

---

[6] The objection was forfeited, not waived, though "jurists often use the words interchangeably." Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004). "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the intentional relinquishment or abandonment of a known right." Id. at 458 n.13 (internal citations and quotations omitted).

The district court, after first observing that Cooper had "cite[d] no case or federal statute to support this contention," briefly explained why the government was entitled to raise a ground not asserted in the administrative proceedings. The court did not address Cooper's constitutional claim, because Cooper did not make a constitutional claim.

[7] Cf. United States v. Polasek, 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection.") (internal citations omitted).

[8] See, e.g., United States v. Quintana-Gomez, No. 07-10139, 521 F.3d 495, 496 (5th Cir.
(continued...)

IV.

The second general question is whether the district court properly granted summary judgment on the theory that even if Cooper's income was community property, the tax liability generated by the community income could be satisfied with the community income withheld from Cooper's wages. "Community property consists of the property, other than separate property, acquired by either spouse during marriage." TEX. FAM. CODE ANN. § 3.002. During 2000, Cooper withheld $7,605 in wages for income tax purposes, and that withheld income, as "the earnings of a spouse during marriage," was community property. Boyd v. Boyd, 67 S.W.3d 398, 413 (Tex. App.SSFort Worth 2002, no writ). "It is settled law in Texas . . . that debts contracted during marriage are presumed to be the debts of the community, absent evidence that the creditor agreed to satisfy the debt solely from the separate property of the contracting spouse." Harris v. United States, 764 F.2d 1126, 1131 (5th Cir. 1985). The IRS was thus permitted to apply community income (i.e., Cooper's withheld wages) to the community debt (i.e., the tax liability for the income Cooper earned during 2000).

Cooper argues against this straightforward analysis in two ways. First, he claims that his amended 1040 was "good evidence that [his] tax liability for 2000 was less than the amount paid" and that the government "did not assert facts supporting any contention that, jointly, [Cooper] and Linda . . . owed more tax than had been paid by them jointly." He also contends that the government

---

[8] (...continued)
2008); United States v. Peltier, 505 F.3d 389, 392 (5th Cir. 2007), petition for cert. filed (Jan. 22, 2008) (No. 07-8978). Cooper also argues that the court erred in considering an aspect of his objection without also considering his related constitutional claims. For this proposition he cites, inter alia, Williams v. Georgia, 349 U.S. 375, 383 (1955), in which the Court said that "[a] state court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues raised in the same manner." CooperSSwe hope inadvertentlySSomitted the word "state" from that passage, because the omitted word makes all the difference. Williams was a habeas corpus case, and the question presented concerned state procedural rules. This precedent, as with the others cited, has nothing to do with the doctrine of forfeiture by inadequate pleading.

offered no evidence that "Linda had not already paid the amount of taxes attributable to her community property interest in income reported by [Cooper] on his previously filed U.S. Individual Tax Return for the year 2000," nor evidence that "Linda, who filed a separate tax return from [Cooper], owed any taxes or that she did not carry a refund forward to absorb any future or additional tax liabilities . . . ."

Instead, Cooper, quoting the district court, argues that summary judgment rested on an "'assum[ption] that the income tax that Cooper and Linda owed in the aggregate tax year 2000 equaled or exceeded the amount withheld from Cooper's wages ($7,605.00).'" Cooper contends that the court was not authorized to make such an assumption, because "unsubstantiated assertions are not competent summary judgment evidence." Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

This is unavailing. As explained above, Cooper, as plaintiff, had the burden of rebutting the presumption that the government's action was lawful.[9] He also bore the burden of showing that genuine issues of material fact remained. See FED. R. CIV. P. 56(e)(2). It was thus incumbent on him to produce credible evidence that the government's calculation was erroneous.

Implicit in the government's summary judgment argument was the assertion that Linda did not pay taxes on Cooper's income in 2000 and that nothing in her filing would allow him to receive a larger refund. This was reasonable; when two people file separate 1040's, it is fair to conclude that neither is paying

---

[9] See, e.g., Sherwin-Williams, 403 F.3d at 796. Cooper argues that the government's notice of dismissal was "naked," so the government was not entitled to a presumption of correctness. If "the government's assessment falls within a narrow . . . category of a naked assessment without any foundation whatsoever," then the presumption does not apply. Portillo v. Comm'r, 932 F.2d 1128, 1133 (5th Cir. 1991) (internal citations and quotations omitted). This, however, is not such a case. Though the court found that the government's invocation of 26 U.S.C. § 66(b) was insufficient to justify summary judgment, the government's position was not naked.

extra taxes to offset potential deficiencies in the other's filing. In fact, without at least some contrary evidence, no reasonable juror could conclude anything else. Because Cooper's argument that it was theoretically possible that Linda paid taxes in 2000 that were adequate to cover the tax liability for both her income and half of Cooper's was nothing more than an "unsubstantiated assertion[]," Forsyth, 19 F.3d at 1533, and an implausible one at that, the district court was right to disregard it.

Cooper also claims that his judgment of divorce foreclosed the government's ability to consider this tax liability as a community debt. The divorce judgment did not assign Linda's tax liability to Cooper, so Cooper claims that her duty to pay her share of the taxes on his 2000 income was hers alone. Thus, he argues, it was error for the district court to offset all the tax liability against the withheld income. Were it otherwise, a parade of horribles surely would ensueSS with the dignity of the states trampled upon, divorces removed to federal court, and maybe even divorces filed in federal court in the first instance.

We need not address, however, whether federal law preempts Texas's family law.[10] The reason is obvious: When the divorce was finalized, Cooper, listing himself as "single," had already filed his 1040 for the 2000 tax year. In that original 1040, he claimed a refund of only approximately $900, meaning that he conceded that he owed $7,195 in taxes, all of which was met by his withheld wages. At the time of divorce, therefore, he had already paid, with community assets, the taxes on that portion of the community's income.

That the state court did not explicitly assign Linda's portion of the tax liability arising from Cooper's income to him, when he had already paid it from community property, is to be expected. Why would the court assign liability for

---

[10] It is of course "an elementary proposition, and the supporting cases too numerous to cite, that [we] may 'affirm the district court's judgment on any grounds supported by the record' . . . ." Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp., 509 F.3d 216, 221 (5th Cir. 2007) (quoting Sojourner T v. Edwards, 974 F.2d 27, 30 (5th Cir. 1992)).

a community debt that had already been paid using community funds? After filing his original 1040, and after the divorce was finalized, Cooper filed an amended 1040, claiming that Linda was responsible for the tax liability of half of the income he generated. It is asking too much of the state court to require it to read entrails to prognosticate that a community debt that was satisfied before a divorce would spring back into being by means of an amended 1040 filing, and expressly assign liability accordingly.[11]

Traditional principles of Texas law apply. "[I]ncome tax liability is a matter of federal law and controlled by the Internal Revenue Code," with "[s]tate law . . . control[ling] whether income is separate or community property." Kimsey v. Kimsey, 965 S.W.2d 690, 695 (Tex. App.SSEl Paso 1998, pet. denied). Because Cooper was married when he filed his original 1040, Texas treated his income and debts at that time as belonging to the community. He used a community assetSShis withheld wagesSSto satisfy a community debt, the tax due on the income that he had generated. The IRS was consequently within its rights to decline Cooper's request for a tax refund.

AFFIRMED.

---

[11] Relatedly, the divorce court ordered Cooper to pay "[a]ny and all debts, charges, liabilities, and other obligations incurred solely by the husband from and after September 2, 1999 unless express provision is made in this decree to the contrary."