**Randy Dale TIBBS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–01–01173–CR, 14–01–01174–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 17, 2003.

Rehearing Overruled Nov. 25, 2003.

Mark W. Bennett, Houston, for appellants.

Donald W. Rogers, Jr., Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FROST.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Following a jury trial, appellant Randy Dale Tibbs was convicted of murder and aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 19.02 and 22.02 (Vernon 1994). The jury assessed punishment at fifteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In one issue, appellant contends the trial court committed reversible error when it admitted certain character evidence. We affirm.

## BACKGROUND

Appellant's charges arose out of a fight that occurred on Saturday, March 17, 2001. On that date, appellant, his fiancee, and their two young children visited the home of appellant's friend, Brian Brown. Appellant helped Brown clear brush from Brown's land and, upon completion of this task, appellant and his family stayed for a barbecue. At approximately 6:00 p.m., appellant and Brown left to purchase beer at a convenience store. They took Brown's Ford Explorer and were accompanied by appellant's fifteen-month-old daughter, Mary.

At the convenience store, Brown and appellant entered the store with Mary. While Brown and appellant were in the store, complainant Simmons parked his vehicle and blocked Brown's car. When Brown, appellant, and Mary returned to their vehicle, harsh words were exchanged between either Brown and Simmons or appellant and Simmons. As Brown circled the parking lot to leave, his car was either flagged down by Simmons, or he decided to confront Simmons on his own. An altercation arose between Simmons and Brown and the two men proceeded to fight with their fists. After several minutes, complainant Ponce, who was also at the store, entered the fight to defend his friend Simmons. There were several bystanders.

Although witnesses gave significantly different accounts of the fight, witnesses agree that at some point, appellant became part of the struggle. He was the only one with a weapon; a "K-bar knife" with a 9-inch blade. Appellant admits stabbing Simmons once in the side and Ponce once in the back and once in the chest. Ponce died at the scene from injuries inflicted by appellant; Simmons suffered a punctured lung but has since recovered.

Matthew Simmons testified that the fight began because either Brown or appellant yelled a racial slur at him as he walked toward the convenience store. According to Simmons, he walked up to the truck and had words with Brown. After words were spoken, Brown exited the truck and began to fight with Simmons. Ponce joined the fight to help Simmons. Brown hit Simmons so hard Simmons fell to his knees and became disoriented. When Simmons re-oriented himself, he saw Ponce and Brown fighting near the passenger side of the truck. Simmons then tried to split Ponce and Brown apart.

While trying to break up the fight, Simmons was stabbed by appellant.

According to appellant's testimony, Simmons started a fight with Brown for no apparent reason. Appellant testified Brown was being beaten by several men and was yelling, "Get'm off me. Get'm off me. Somebody call the cops." The men moved so close to the truck in which appellant and his daughter were sitting that the truck began to rock with the force of the fighting. As that happened, appellant began to look for something with which to defend himself. Appellant found a knife in the back of Brown's truck. At that moment, appellant testified someone pulled him out of the truck. Appellant said he thought about driving away, but was unable to do so before someone pulled him out of the truck.

At trial, the State's theory of the case was that appellant and Brown were white supremacist "skinheads" and that the fight was racially motivated. To support this theory, evidence was offered to show:

- Appellant and Brown are both Caucasians; both had shaved heads the day of the fight; and Brown had swastika and neo-Nazi lightening bolt tattoos over much of his body.
- Simmons is half African–American; Ponce was Hispanic.
- Brown's actions the day of the fight were, according to bystanders, "full of hate."
- Brown made derogatory remarks to a Pakistani store clerk.
- Either Brown or appellant started the fight by addressing Simmons with a racial slur.
- Brown made racially-charged comments during the fight.
- Brown was known as a racist and "neighborhood skinhead" prior to the fight.

- Brown was once arrested for spray-painting a wall covered with "Mexican graffiti."
- Brown once claimed to worship "Odin" in the religious-preference section of a police department booking sheet.[1]

Appellant's theory of the case was that appellant stabbed Ponce and Simmons in self-defense and in defense of Brown and appellant's daughter. To support this theory, appellant offered the following evidence:

- Appellant and Brown went to the store to buy beer, not to provoke a racially-charged incident.
- Brown has friends and family who are Hispanic and African–American.
- Brown attends a Baptist church and his mother is unaware of any affiliation with "Odin."
- Brown and appellant have reputations for peacefulness and are not racists.
- Simmons admits he has been convicted three times for assault and that he is not the type to back down from a fight.
- While Simmons admits he had six to seven beers prior to the fight, neither Brown nor appellant ingested alcohol prior to the incident.
- Ponce's autopsy revealed his blood alcohol level was three times the legal driving limit, he had significant amounts of pure cocaine in his body fluids, and he took cocaine within an hour of his death.
- The bulk of Brown's tattoos were covered by clothing the night of the fight and the tattoos described by the State as "neo-Nazi" were not visible.

- Brown made innocuous small talk with an African American man in the store immediately prior to the fight.
- Brown's use of the word "nigger" was made in an inoffensive way.
- Brown did not provoke the fight with Simmons; rather, Simmons initiated it by blocking Brown's vehicle and by engaging Brown as he tried to exit the parking lot.
- Brown tried to disengage during the fight by (1) initially driving away from Simmons before being flagged down; (2) pointing out there was a little girl in the car; and (3) calling for appellant's help after Ponce, Simmons, and two others outnumbered Brown in the fight.
- Appellant remained in the car with Mary, despite Brown's calls for help and his being outnumbered by at least four to one.
- Appellant feared for Brown's, Mary's, and his own safety, and he perceived a threat of bodily harm because Brown was hit on the head with a beer bottle.
- Appellant was pulled from Brown's car by Brown's attackers; he did not leave the vehicle willingly.
- Fearing for Mary's and Brown's safety, as well as his own, appellant blindly swung the knife at his attackers.
- As a result of the encounter, appellant suffered a black right eye, bruised left eye, and an injury to his hand.

## ANALYSIS

■ Appellant asserts one point of error, arguing the trial court committed reversible error when it (1) admitted irrelevant and unfairly prejudicial evidence that Brown, who was with appellant at the time

---

1. According to testimony offered at trial, Odin is a Norse god whose teachings are followed by some white supremacists.

of the charged offenses, was a neo-Nazi skinhead; (2) allowed the State to portray appellant as a skinhead by this association; and (3) admitted other irrelevant and unfairly prejudicial, racially-charged evidence.

## Standard of Review

◼ We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim. App.2000). We will reverse only if the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim.App.1990).

## Waiver

◼ In his appeal, appellant objects to the trial court's admission of several pieces of evidence pertaining to Brown's character. Specifically, he objects to the State's evidence that suggests Brown is a racist and "skinhead," Brown was once arrested for spray-painting over Mexican graffiti, Brown once identified himself as an "Odinist" on a police booking sheet, and Brown has Swastika and "SS" tattoos over much of his body.

The State asserts appellant waived his right to appeal most of this evidence. First, the State asserts appellant failed to timely object to much of the objectionable evidence. *See* Tex.R.App. P. 33.1(a)(1)(A); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App.1997). Next, it asserts appellant elicited similar evidence in other testimony and so cannot now object to the evidence's admission. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). Third, it asserts appellant provided no record cites to certain evidence and so forfeited his right to object to the evidence's admission. *See* Tex.R.App. P. 38.1(h); *Aldrich v. State*, 928 S.W.2d 558, 560 n. 2

(Tex.Crim.App.1996). Finally, the State argues appellant's written motions and running objections were ineffective in preserving error for appellate review. *See Gonzales v. State*, 994 S.W.2d 170, 171–72 (Tex.Crim.App.1999).

◼ To preserve error for appellate review the complaining party must make a timely objection specifying the grounds for the objection if the grounds are not apparent from the context, the objection must be made at the earliest possible opportunity, and the complaining party must obtain an adverse ruling. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex.Crim.App.1998). The objection will be sufficient to preserve error for appellate review if the objection communicates to the trial judge what the objecting party wants, why the objecting party thinks himself or herself entitled to relief, and does so in a manner clear enough for the judge to understand the objection and request at a time when the trial court is in a position to do something about it. *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim.App.1992). Here, appellant filed a motion in limine, objected at the time the evidence was admitted, and obtained running objections to any evidence that appellant or Brown was a member of a racist gang. Therefore, appellant preserved error.

## Character Evidence

At trial, all relevant evidence is admissible unless otherwise excepted by the Constitution, statute, or other rules. Tex.R. Evid. 402. "Relevant evidence" is defined as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401.

■ Gang membership evidence is admissible under Texas Rule of Evidence 404(b) if it is relevant to show a non-character purpose that in turn tends to show commission of the crime. *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex.Crim. App.2002). Gang membership may be admissible to show bias, motive, intent, or to refute a defensive theory. *See, e.g., United States v. Sargent*, 98 F.3d 325, 328 (7th Cir.1996); *Stern v. State*, 922 S.W.2d 282, 287 (Tex.App.-Fort Worth 1996, pet. ref'd).

Here, appellant's defensive theory was that he stabbed the complainants because he was defending Brown, Mary, and himself. Evidence of Brown's membership in a racist gang served to rebut appellant's testimony that he and Brown were attacked by several men without provocation. Simmons testified that the fight began when someone in Brown's truck yelled a racial slur as Simmons walked by the truck. Simmons further testified that he thought Brown and appellant "were a member of some kind of thing."

Appellant contends the evidence was inadmissible because it tended to show appellant's guilt by association with Brown. The cases cited by appellant hold evidence that tends to show guilt by association is inadmissible because it has no bearing on the accused's guilt or innocence. *See generally United States v. Parada–Talamantes*, 32 F.3d 168, 169–70 (5th Cir.1994); *United States v. Roark*, 924 F.2d 1426, 1430–34 (8th Cir.1991); *United States v. Romo*, 669 F.2d 285, 287–90 (5th Cir.1982); *Gant v. State*, 513 S.W.2d 52, 53 (Tex. Crim.App.1974). The facts of this case, however, make evidence of Brown's and appellant's association with a racist gang

admissible to rebut appellant's defensive theories. Simmons testified that Brown and appellant started the fight by uttering a racial slur. Appellant testified that Simmons started the fight by blocking their vehicle in the parking lot. Appellant further testified that he used the knife to defend himself because Brown was being beaten by several men. Evidence of Brown's racial bias was admissible to rebut appellant's theory that Simmons started the fight and that appellant was acting in self-defense.[2] *See Ortiz v. State*, 93 S.W.3d 79, 94 (Tex.Crim.App.2002), *cert. denied*, — U.S. ——, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003). Because the trial court did not err in admitting the evidence, appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.

JOHN S. ANDERSON, J., concurring.

JOHN S. ANDERSON, Justice concurring.

I concur in the court's judgment, but I disagree with the majority's analysis to the extent it holds the trial court did not err when it admitted evidence of Brown's skinhead affiliations and racist activities. This error, however, was harmless.

## THE STATE'S EVIDENCE WAS INADMISSIBLE CHARACTER EVIDENCE

Evidence pertaining to a third person who is not the victim, accused, or a witness, is character evidence subject to Evidence Rule 404 analysis. *See Castaldo v. State*, 78 S.W.3d 345, 348–51 (Tex.Crim. App.2002) (finding rule limiting evidence of

---

2. The concurrence states that although appellant received a self-defense instruction at trial, he was not entitled to that instruction; therefore, the State was not entitled to introduce evidence to rebut appellant's defense. The concurrence cites a dissenting opinion in

*Mozon v. State*, 991 S.W.2d 841 (Tex.Crim. App.1999), in support of this proposition. The concurrence cites no other authority, nor can we find any authority, that would allow this court to review admissibility of evidence based on a hypothetically correct charge.

other crimes, wrongs, or acts applies not only to accused, but also to third persons). Evidence that a person is a skinhead or affiliated with a gang is also evidence subject to Evidence Rule 404 analysis. *See Pondexter v. State,* 942 S.W.2d 577, 583–84 (Tex.Crim.App.1996) (gang evidence not relevant under Evidence Rule 401 may not be introduced during guilt/innocence stage if proffered simply to show bad character).

Evidence of Brown's tattoos and gang-affiliation is properly characterized as character evidence. As such, it is inadmissible during the guilt/innocence phase of a defendant's trial unless it is relevant for a "non-character" purpose that tends to show commission of the crime. *Vasquez v. State,* 67 S.W.3d 229, 239–40 (Tex.Crim. App.2002); *see also* Tex.R. Evid. 404(a), (b); *Pondexter,* 942 S.W.2d at 584 n. 2 (gang evidence introduced during guilt/innocence phase "to show . . . bad character" is improper).

## THE STATE'S EVIDENCE WAS NOT RELEVANT FOR A NON–CHARACTER PURPOSE

Appellant testified he is not a skinhead or member of a gang. Evidence that *his friend* is a skinhead is irrelevant, unfairly prejudicial, and convicts appellant through guilt by association.

The majority argues that the racial slurs coming from Brown's car immediately preceding the fight and the racially-charged remarks made by Brown during the fight show a causal connection between the assault and Brown's neo-Nazi tattoos and racially-motivated behavior. Photographs of Brown's tattoos—including a swastika and other Nazi symbols—are relevant, argues the majority, to show intent and motive and to rebut appellant's self-defense argument. *See Bradshaw v. State,* 65 S.W.3d 232, 238 (Tex.App.-Waco 2001, no pet.).

I disagree. The need to show motive and intent, the need to rebut a self-defense argument, and the need to show any number of other potential bases for admission of gang-affiliation evidence simply are not extant in this case.

### (1) The evidence was not necessary to prove intent.

Aggravated assault and murder both require culpable mental states of intentionally or knowingly causing bodily injury or death, and appellant's indictments so provided. *See* Tex. Pen.Code §§ 22.02, 19.02. At trial, therefore, the State was required to prove appellant intentionally or knowingly caused bodily injury and death when he assaulted Ponce and Simmons.

Intent can be inferred from an accused's acts, words, or conduct. *See Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982); *Beltran v. State,* 593 S.W.2d 688, 689 (Tex. Crim.App.1980); *In re B.P.H.,* 83 S.W.3d 400, 408 (Tex.App.-Fort Worth 2002, no pet.). A specific intent to kill may be inferred from the use of a deadly weapon unless, in the manner of its use, it is reasonably apparent that death or serious bodily injury could not result. *Staley v. State,* 887 S.W.2d 885, 889 (Tex.Crim.App. 1994). Where the State's direct evidence clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the State's witnesses, the offer of other crimes is unjustified due to the lack of relevancy. *Rankin v. State,* 974 S.W.2d 707, 719 (Tex.Crim.App.1996) (op. on reh'g).

A knife is considered a deadly weapon if used in a manner capable of causing death or serious injury. Tex. Pen.Code Ann. 1.07(a)(17)(B)(Vernon 1994) (defining deadly weapon as "anything that in the manner of its use or intended use is capable of

causing death or serious bodily injury"); *McCain v. State*, 22 S.W.3d 497, 502–03 (Tex.Crim.App.2000) (finding knife to be a deadly weapon); *Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex.Crim.App.1991) (same). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that defendant intended to kill. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App.1993); *see also Gutierrez v. State*, 85 S.W.3d 446, 450 (Tex.App.-Austin 2002, no pet. h.) (finding jury could infer culpable intent to kill where numerous witnesses observed—and appellant admitted—appellant stabbed and killed victim in self-defense).

Here, appellant produced a knife with a 9–inch blade, blindly swung the knife at his attackers, killing one person and injuring another. A reasonable trier of fact could infer from these acts that appellant had the intent to cause death or bodily harm. *See* Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon 1994); *see also B.P.H.*, 83 S.W.3d at 408 (finding intent to kill could be inferred where defendant pulled out knife and threatened student with death if student acted as witness against defendant).

Consequently, character evidence about Brown's racist activities was not necessary for the State to prove the element of intent for both offenses. *See Rankin*, 974 S.W.2d at 719.

**(2) The evidence was not necessary to rebut self-defense, because appellant was not entitled to such an instruction.**

Appellant testified his attacks on Ponce and Simmons were made in self-defense and a self-defense instruction was submitted to the jury. The evidence, however, does not support such a charge; thus, rebuttal evidence was unnecessary.

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See* Tex. Pen.Code Ann. § 9.31(a) (Vernon Supp.2003). Deadly force, however, is only justified when a reasonable person in the actor's situation would not have retreated. *Id.* at § 9.32(a)(2); *see also Juarez v. State*, 886 S.W.2d 511, 513–14 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *Broussard v. State*, 809 S.W.2d 556, 558–59 (Tex.App.-Dallas 1991, pet. ref'd).[1]

Before an instruction on self-defense is warranted, the defendant has the burden of coming forward with evidence that sufficiently raises the issue. *Clifton v. State*, 21 S.W.3d 906, 907 (Tex.App.-Fort Worth 2000, pet. ref'd); *see also Riddle v. State*, 888 S.W.2d 1, 6 (Tex.Crim.App.1994). If he meets this burden, the right to the instruction enures to the defendant regardless of whether the evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of his defense. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996); *Torres v. State*, 7 S.W.3d 712, 714 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

Here, evidence suggests there were three ways appellant could have "retreated": he could have retreated within the car itself, by locking its doors and/or driving away; he could have retreated to the convenience store and called 9–1–1; or he could have retreated on foot by grabbing

1. The reasonableness of an accused's belief that force was required to defend himself is viewed from the defendant's standpoint at the time he acted. *Juarez*, 886 S.W.2d at 514; *see also* Tex. Pen.Code Ann. § 1.07(a)(42) (Vernon 1994) ("Reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.").

Mary and running away. No evidence was produced to demonstrate appellant utilized any of these escape routes.

Rather, three State witnesses and one defense witness testified appellant voluntarily got out of Brown's vehicle. Indeed, the State's witnesses all testified appellant entered the fight willingly; one even testified appellant could have re-entered the vehicle, locked the doors, or entered the store and called police. No one testified to hearing appellant say anything like "stop or I'll cut you."

Although appellant testified he did not *voluntarily* get out of Brown's vehicle, he does admit *he planned to*. His plan, he claims, was to attempt to scare Brown's assailants with the knife; however, before he could execute the plan, he was pulled from Brown's van and forced to defend himself. He admits that—despite "thinking about it"—he did not try to lock the car doors during the fight, did not attempt to roll up the windows, and did not try to get into the driver's seat and drive off. The only rational inference to draw from such evidence is that appellant did not behave as a reasonable person in appellant's position would have—namely, he did not retreat; rather he made plans to escalate the confrontation. *See Broussard,* 809 S.W.2d at 560 (finding where "there [was] nothing in evidence to show that a reasonable person in [appellant's] circumstances would not have retreated," appellant was not entitled to self-defense instruction).

Because the record fails to support the "inability to retreat" element of self-defense, I believe the evidence at trial was insufficient to raise the issue of self-defense with deadly force. *See* TEX. PEN. CODE ANN. § 9.32(a)(2) (Vernon Supp. 2003); *Riddle,* 888 S.W.2d at 6–7 (appel-

lant not entitled to self-defense instruction where appellant did not testify he could not retreat or that he attempted to retreat but was prevented from doing so); *Flores v. State,* 49 S.W.3d 29, 34 (Tex.App.-San Antonio 2001, pet. ref'd) (appellant not entitled to self-defense instruction where he shot victim nine times, took another gun, and shot victim two more times because a rational juror could not believe "a reasonable person in [appellant's] situation would not have retreated").

Because appellant was not entitled to an instruction on self-defense, Brown's character evidence had little, if any, probative value and "[g]iven the danger of unfair prejudice," the trial court should have excluded it. *See Mozon v. State,* 991 S.W.2d 841, 848 (Tex.Crim.App.1999) (Keller, J., dissenting).[2] Even though the rule articulated in *Mozon* is in the dissent, the mere location of the rule does not defeat its accuracy. The essential element justifying deadly force in self-defense is "a reasonable person in the actor's position would not have retreated." TEX. PEN.CODE ANN. § 9.32(a)(2) (Vernon Supp.2003). Because appellant failed to prove that a reasonable person would not have retreated, his self-defense instruction was improper, and concomitantly, evidence rebutting that instruction was improperly admitted.

Moreover, even if appellant *had* been entitled to the trial court's self-defense instruction, the State's character evidence regarding Brown was unnecessary because, as determined above, a reasonable trier of fact could clearly infer from appellant's acts with a deadly weapon that he had the intent to kill or cause bodily harm. *See B.P.H.,* 83 S.W.3d at 408.

---

**2.** Although appellant received the "windfall" of an instruction concerning self-defense in the jury charge, that does not change the

analysis. *See Mozon v. State,* 991 S.W.2d 841, 848 n. 1 (Tex.Crim.App.1999) (Keller, J., dissenting).

**(3) The evidence was not necessary to satisfy a hate crime enhancement.**

Under Texas law, a person found guilty of certain hate crimes can be subject to enhanced punishment. TEX. PEN.CODE ANN. § 12.47(a) (Vernon Supp.2002) (stating that if an affirmative finding under 42.014 of the Texas Code of Criminal Procedure is made in the trial of an offense other than a first degree felony or Class A misdemeanor, punishment increases to the next highest category of punishment); *see also Martinez v. State*, 980 S.W.2d 662, 666 (Tex.App.-San Antonio 1998, pet. ref'd); *Sterry v. State*, 959 S.W.2d 249, 255 (Tex.App.-Dallas 1997, no pet.).

In such cases, the State must prove the person intentionally selected his victim because of his race or some other feature. TEX.CRIM. PROC.CODE ANN. art. 42.014(a) (Vernon Supp.2002) (stating that if the trier of fact in the guilt-innocence phase of a trial determines defendant intentionally selected his victim because of bias or racial prejudice, that fact shall be used in judgment of the case).

Here, no hate crime enhancement was sought against appellant. The State's indictment did not include an enhancement and the State did not submit the hate crime issue to the jury. Additionally, no evidence was produced to indicate *appellant* was a racist or skinhead. The homicide detective who testified on behalf of the State said he found *no evidence or documentation* that appellant was a racist or skinhead, and when he provided the Federal Bureau of Investigation (FBI) with information about appellant's offenses, the FBI, too, found no hate crime.

Because the State did not seek a hate crime enhancement, and because the State proffered no proof appellant himself was a racist, the State did not need evidence tending to suggest appellant's crimes were racially motivated. Therefore, evidence that appellant's friend, Brown, sported racist tattoos, that he was once arrested for painting over "Mexican graffiti," and that he once claimed to follow "Odin," was irrelevant.

**(4) The evidence was not necessary to show appellant belonged to a gang.**

Brown was not the person on trial; appellant was. Indeed, Brown never even appeared as a witness. Yet two State witnesses and five defense witnesses testified for no other reason than to provide evidence as to Brown's character.

Such evidence was irrelevant to prove appellant committed the crimes in question. Indeed, neither the majority nor the State cite authority for the proposition that character evidence pertaining to someone not on trial—who is not even a witness—is relevant to proving a defendant's guilt. Quite the opposite is true: "evidence as to character should be confined to the defendant's character alone, and the inquiry should not be extended to the character of others connected with him or with whom he may associate." *Holsey v. State*, 24 Tex.App. 35, 5 S.W. 523, 525 (1887); *see also Gant v. State*, 513 S.W.2d 52, 53 (Tex.Crim.App.1974) ("It should be . . . obvious that the character of one's associates is no evidence of guilt, and we have held that such evidence should not be admitted.").

"Guilt by association" has been rejected in Texas. *Holsey*, 5 S.W. at 525. Indeed, the mere presence of an accused in the company of another is not enough to connect a defendant to a charged offense. *Wincott v. State*, 59 S.W.3d 691, 698 (Tex. App.-Austin 2001, pet. ref'd) (finding association with another may be offered as corroboration, but only when facts and circumstances sufficiently connect the accused with commission of the crime).

When gang evidence is admitted during trial, guilt by association becomes a "genuine concern." *U.S. v. Irvin*, 87 F.3d 860, 865 (7th Cir.1996) (finding abuse of discretion where "highly charged gang-affiliation" was admitted to serve as a substitute for direct evidence against a passenger in a stopped vehicle found to contain drugs); *U.S. v. Polasek*, 162 F.3d 878, 887 (5th Cir.1998) (noting court had repeatedly characterized guilt by association evidence as "highly prejudicial").

Texas courts have been very careful when admitting skinhead and gang-affiliation evidence during the guilt-innocence phase of trial—indeed, they appear to have done so only when such evidence pertains to a defendant or witness, not when it pertains to a defendant's associates. *See Vasquez*, 67 S.W.3d at 239–40 (defendant's Mexican Mafia affiliation admissible to show defendant's motive for killing victim); *Williams v. State*, 974 S.W.2d 324, 331 (Tex.App.-San Antonio 1998, pet. ref'd) (defendant's gang affiliation admissible to show defendant's motive to rob victim); *McKnight v. State*, 874 S.W.2d 745, 747 (Tex.App.-Fort Worth 1994, no pet.) (defendant's and witness's gang membership admissible to show defendant's bias); *Langley v. State*, 723 S.W.2d 813, 817 (Tex. App.-Tyler 1987, pet. ref'd) (defendant's membership in Aryan Brotherhood admissible to show defendant's pre-existing relationship with fellow kidnapper).

Here, no evidence was admitted to show appellant belonged to a gang. Thus, evidence that *Brown* was a skinhead was irrelevant.

### (5) The evidence was not necessary to place appellant's acts into context.

It is undisputed that character evidence of a defendant's membership or association with a gang and the gang's character and reputation are properly admissible during the punishment phase of a trial. *Jones v. State*, 944 S.W.2d 642, 652–53 (Tex.Crim. App.1996). During the guilt/innocence phase of a trial, however, such evidence is generally inadmissible unless it fits within the "same transaction contextual evidence" rule. *Pondexter v. State*, 942 S.W.2d 577, 583–84 (Tex.Crim.App.1996); *Macias v. State*, 959 S.W.2d 332, 339 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd).

Under the "same transaction contextual evidence" rule, character evidence such as crimes, wrongs, or other acts is admissible only when an offense would make little or no sense without it. *Pondexter*, 942 S.W.2d at 584. Indeed, it is only in situations *where there is no other reason* for defendant to have acted as he did to commit a crime that gang-affiliation evidence comes in during the guilt-innocence stage of a trial. *Brumfield v. State*, 18 S.W.3d 921, 925–26 (Tex.App.-Beaumont 2000, pet. ref'd) (emphasis added) (finding evidence that defendant was member of Aryan Circle admissible to prove intent to work together in continuing course of criminal conduct).

Here, appellant's assaults on Ponce and Simmons were not random acts of violence. Nothing suggests Ponce and Simmons were targets of a drive-by shooting or predetermined plan; rather, evidence suggests just the opposite: Simmons blocked Brown's car and Brown and appellant were unhappy about it; Simmons—an acknowledged fighter—had six or seven beers the night in question and Ponce had alcohol and cocaine in his system; Brown's mother testified Brown had problems controlling his temper; and Brown and appellant circled the parking lot to leave the store, but were flagged down by Simmons.

Because evidence that Brown has tattoos and is a skinhead is not necessary to make sense of appellant's offense, such evidence was inadmissible during the

guilt/innocence stage of appellant's trial. *See Pondexter,* 942 S.W.2d at 584 (finding that "[h]ad the State put on its case without ... appellant's connection with gangs, the jury surely would have had no problems following and understanding the sequence of events of the night of the murder"); *Macias,* 959 S.W.2d at 339 (finding "[u]ndoubtedly the State could have presented a clear and understandable case" explaining appellant's actions without interjecting "unnecessary information" about appellant's gang-affiliation).

Finding the State's proffered evidence does not tend to make the existence of a material fact more or less probable, it is my opinion that the trial court abused its discretion in admitting the evidence about Brown and his tattoos. *See Rankin,* 974 S.W.2d at 719 (op. on reh'g) (where State's direct evidence clearly showed intent and was uncontradicted by defendant, offer of other crimes was unjustified due to lack of relevance); *Montgomery,* 810 S.W.2d at 391 (admission of extraneous acts was abuse of discretion where State had no compelling need for the evidence to prove intent or shore up testimony); *Owens v. State,* 827 S.W.2d 911, 916 (Tex.Crim.App. 1992) (extraneous offense evidence was inadmissible where only fact to be resolved in aggravated sexual assault prosecution was whether criminal offense occurred as alleged).

## HARM ANALYSIS

Although it is my opinion that the trial court erred in admitting evidence of Brown's skinhead affiliations and racist activities, I believe the error was harmless.

Where error is not constitutional, we disregard it if it does not affect the appellant's substantial rights. *See* TEX.R.APP. P.

44.2(b). A substantial right is affected where the error causes a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000); *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

After a careful review of the record, the nature of the evidence supporting the verdict, the character of the error, appellant's defensive theory, and the amount of emphasis the State placed on the error, it is my opinion that admission of Brown's skinhead affiliation and tattoos did not have a substantial and injurious effect on the jury's verdict. *See Motilla,* 78 S.W.3d at 355.

First, the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly-admitted evidence. *Brooks v. State,* 990 S.W.2d 278, 287 (Tex.Crim.App. 1999). Here, appellant himself provided much of the evidence to which he now objects.[3] Indeed, five witnesses—Brown's mother, two of Brown's longtime Hispanic acquaintances, and two witnesses who were in the convenience store at the time Brown allegedly made comments about "Pakistanis and Jews"—were put on by the defense to address the issue of Brown's character.

Next, the evidence represented only a small part of the proof put on by the State. The State put on thirteen witnesses and admitted 52 exhibits during five days of testimony. The defense put on eleven witnesses and admitted 30 exhibits. Yet, the evidence to which appellant now excepts encompasses less than 100 lines of prosecution testimony and only three photographs.

**3.** Arguably, appellant proffered this testimony to place objectionable State evidence into context.

Finally, the injurious effect of the trial court's error—namely, that the State was allowed to make racism a theme of its case—was likewise minimal. While Brown's character evidence may potentially have diverted jurors from appellant's self-defense claim, appellant was not entitled to the defense. Moreover, the State's evidence may have even *helped* appellant because appellant was able to rebut State evidence with evidence of his own that Brown and appellant were *not* racists.[4] *See, e.g., Castaldo,* 78 S.W.3d at 350–51 (acknowledging that while evidence defendant voluntarily rode with intoxicated driver may have shown defendant to be reckless, it also *helped* the defense because it showed the person who caused the accident was intoxicated and a "bad person").

The unchallenged evidence in this case permitted the jury to find all of the elements of the charged offense. This evidence was not contradicted. Given this evidence, the jury was clearly not equally balanced on the issue of guilt or innocence. Indeed, nothing suggests the jury would have come back with a different verdict "but for" admission of Brown's character evidence.

Accordingly, it is my opinion that the erroneous admission of Brown's character evidence was harmless. Finding no reversible error, I concur in the majority's judgment.

---

**4.** This help was reflected in the minimal amount of weight the jury seemed to place on the error. Indeed, during the trial's punishment phase, the jury attempted to give appellant probation for both the murder and aggravated assault. It was only after the jury's initial attempt to assess a "light" sentence failed, that jurors assessed punishment at 15 years' confinement. This suggests the jury—despite appellant's failure to produce evidence satisfying all the elements of self-defense—remained sympathetic to appellant.