**Affirmed and Memorandum Opinion filed May 22, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01027-CR

**ANTONE RICHIE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1300545**

## MEMORANDUM OPINION

Appellant Antone Richie appeals his conviction for murder. On appeal, he contends that the evidence is insufficient to support his conviction and the trial court's assessment of court costs.

### BACKGROUND

It is undisputed that appellant was searching dumpsters for scrap metal outside of a building on March 21, 2011, when complainant Jim Lee, an overnight

security guard at the building, approached appellant. Lee demanded that appellant "keep moving" and quit searching the dumpsters. Tempers flared, the two exchanged profanities, and a physical altercation ensued. During the altercation, appellant drew a folding knife, cut Lee several times across the arms, face, and chest, and stabbed Lee once in the arm. At some point, the knife folded back onto appellant's thumb, cutting him as well.

The record reflects that Lee retreated back to his building and appellant fled across the street to a bank. Appellant got the attention of a security guard at the bank, told the guard about the altercation with Lee, and accepted the guard's offer to call the police and an ambulance for appellant. Emergency medical services arrived at the scene quickly. After treating appellant's thumb, the paramedics departed.

Houston Police Officer Thomas Gabler responded to the call and arrived at the bank shortly after the paramedics left. According to Gabler's testimony at trial, appellant described the incident to him as an assault by Lee, cooperated with questioning, and turned over the knife used during the fight. Appellant told him that he was struck by Lee, and that in response he stabbed Lee in the arm. Additionally, appellant told Gabler that he had tried to stab Lee in the stomach area, but that he was unsuccessful because the knife folded back on his thumb. Observing fresh blood on the blade of the knife, Gabler decided to investigate the scene where appellant and Lee had fought. Though he did not see Lee or blood from either party, Gabler prepared an incident report "[i]n case the other party actually existed and came forward."

Meanwhile, the record reflects that Lee continued with his usual activities for two days after the reported incident. He worked his usual morning and afternoon shifts as a crossing guard at an elementary school, and when asked about

his visible cuts and bruises, he reportedly told others they were caused by barbed wire he encountered while doing yard work. On the second night after the incident, Lee went into severe shock and called the paramedics. By the time paramedics arrived and transported Lee to the hospital, he was experiencing multiple organ failure. Again, Lee claimed to the paramedics his injuries were caused by yard work. After intensive care and three surgeries, Lee passed away at the hospital on the sixth day after the altercation with appellant.

Despite Lee's statements to the contrary, hospital staff believed that some of his injuries were, in fact, stab wounds. Consequently, they sent Lee's body to be autopsied by the Harris County Medical Examiner and alerted the Houston Police Department to a possible homicide. After an investigation, appellant was arrested. While in custody, appellant voluntarily gave a recorded statement to Homicide Investigator Todd Miller about the fight. In his statement, appellant told Miller that he had tried to stab Lee but the knife "wouldn't go in." This recorded statement was entered into evidence at trial.

Doctor Sara Doyle performed the autopsy and testified at trial. She reported that Lee's wounds did not fit the pattern of barbed wire, but instead were consistent with stab wounds. Though many of his wounds were superficial, Lee had a stab wound six inches deep into his abdomen. The instrument that stabbed Lee in his abdomen had perforated his small intestine, causing bacterial matter to leak into his abdominal cavity over several hours.

Doyle testified that the bacteria entered Lee's bloodstream and caused sepsis. The resulting infection caused Lee to slip into "multiple organ failure" before he arrived at the hospital. Ultimately, Doyle concluded that Lee's death was caused by the severe sepsis and organ failure that were "complications of the stab wound of his abdomen with perforation of his intestine."

3

At the conclusion of the trial, the jury found appellant guilty of murder, enhanced by two prior felony convictions, and assessed punishment at thirty years in prison. This appeal followed.

## ANALYSIS

### I. Legal Sufficiency of the Evidence to Support Appellant's Conviction

In his first two issues, appellant asserts that the evidence is insufficient to support his conviction. Appellant was charged under sections 19.02(b)(1) and 19.02(b)(2) of the Texas Penal Code, and the jury charge tracked the language of the indictment. Appellant contends that the evidence is insufficient to support his conviction because a rational factfinder could not have concluded that appellant committed the offense of murder. Appellant also contends that the evidence is insufficient to support the jury's negative finding against him on the issue of self-defense.

When evaluating the legal sufficiency of the evidence to support a criminal conviction, we must view all the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

When the record presents conflicting inferences, a reviewing court presumes that the jury resolved the conflicts in favor of the verdict. *Temple*, 390 S.W.3d at 360. The jury is the sole judge of the weight and credibility of witness testimony. *Id*. Additionally, the jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).

Under this standard, a criminal conviction may be based on circumstantial evidence. *Temple*, 390 S.W.3d at 359. The State is not required to present direct evidence, such as eyewitness testimony, to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The law does not require that each piece of evidence point directly and independently to the guilt of appellant, as long as "the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## A. Sufficiency of the Evidence to Support Finding that Appellant Committed the Offense

A person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code § 19.02(b)(1). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id*. § 6.03(a). A person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. *Id*. § 6.03(b). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*.

Viewing the evidence in the light most favorable to the verdict, we determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Laster*, 275 S.W.3d at 517. After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any element of the offense. *Laster*, 275 S.W.3d at 518. We begin with the element of causation before turning to whether appellant acted intentionally or knowingly.

### 1. Whether Appellant Caused the Death of Complainant

Appellant first complains of the lack of direct evidence showing that

appellant caused the stab wound to Lee's abdomen, but the State is not required to present direct evidence to establish an element of the offense. *See Guevara*, 152 S.W.3d at 49. Rather, the element may be proved by the cumulative force of all the incriminating circumstances. *See Hooper*, 214 S.W.3d at 13.

In this case, it is undisputed that appellant fought with Lee, cut Lee numerous times across the arms and face, and stabbed him once in the arm. Testimony from Officer Gabler, as well as appellant's recorded statement to Investigator Miller, show that appellant attempted to stab Lee in the stomach, but thought he was unsuccessful. Although appellant claims that a wound six inches deep was inconsistent with a knife blade only five inches long, Dr. Doyle explained to the jury that a five-inch knife blade can cause a six-inch wound when the blade is thrust into a soft part of the body, such as the abdomen. Similarly, Dr. Doyle explained that the lack of blood on the blade and around the crime scene, while atypical, was not so unusual because the autopsy in this case indicated that no major organs or blood vessels were pierced. The jury was entitled to believe the testimony of Officer Gabler and Dr. Doyle over appellant's proffered explanation that the knife never actually entered Lee's abdomen. *See Temple*, 390 S.W.3d at 360.

Viewed in the light most favorable to the verdict, the combined force of the incriminating circumstances allowed the jury to rationally conclude beyond a reasonable doubt that appellant caused the stab wound in Lee's abdomen with the knife appellant used during the encounter. *See Hooper*, 214 S.W.3d at 13.

Appellant also contends that the evidence is insufficient to show he caused Lee's death because complainant waited several days before seeking medical treatment for his wounds. Yet, Dr. Doyle testified that she believed Lee would not have died but for the stab wound to his abdomen. *See* Tex. Penal Code § 6.04 ("A

person is criminally responsible if the result would not have occurred but for his conduct . . . ."). Furthermore, there is no statutory requirement that a victim seek medical treatment promptly or at all. *See generally* Tex. Penal Code §§ 8, 9 (not listing any defense that victim fails to seek medical treatment); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (rejecting appellant's argument that he lacked specific intent to kill complainant because the medical examiner testified that "had the victim had medical attention, she would have had a 'great chance to live'").

Based on the testimony from medical personnel that complainant would not have died but for the stab wound, a rational factfinder could have found beyond a reasonable doubt that appellant's actions caused the death of Lee. *See Laster*, 275 S.W.3d at 517. We hold that the evidence is legally sufficient to uphold this element of the offense.

### 2. Whether Appellant Acted With Intent or Knowledge

The specific intent to kill may be inferred from the use of a deadly weapon. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is *capable of causing death or serious bodily injury*." Tex. Penal Code § 1.07(a)(17) (emphasis added). A knife that produces injuries which result in death or serious bodily injury is a deadly weapon. *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.) (citing *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995)).

The record in this case indicates that Lee's death was caused by injuries from appellant's knife. When the knife perforated Lee's intestine, a hole in the

intestine allowed bacterial matter to leak into Lee's abdominal cavity. The bacterial matter, in turn, caused the poisoning of Lee's bloodstream. Although Lee underwent extensive medical treatment and three surgeries during his time in the hospital, the testimony of Dr. Doyle indicated that he died from blood poisoning and organ failure that were direct complications of the stab wound to his abdomen.

Viewing the evidence in a light most favorable to the verdict, we conclude a rational factfinder could have found that Lee's death resulted from the stab wound inflicted by appellant's knife. *See Laster*, 275 S.W.3d at 517. Thus, the jury was entitled to conclude that the knife was a deadly weapon, and that appellant had the specific intent to kill. *See Tyra*, 897 S.W.2d at 798; *Godsey*, 719 S.W.2d at 580–81. We therefore conclude that legally sufficient evidence exists to support a finding on this element. *See Tibbs v. State*, 125 S.W.3d 84, 90–91 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (Anderson, J., concurring) (holding that a reasonable factfinder could infer appellant's intent to kill based on his use of a knife that killed one of his attackers).

When the trial court's charge authorizes the jury to convict on more than theory, as it does in this case, the conviction will be upheld if the evidence is sufficient on any one of the theories. *Guevara*, 152 S.W.3d at 49. Because sufficient evidence exists to support the jury's finding of each element of the offense of murder under section 19.02(b)(1), we need not discuss appellant's arguments regarding the sufficiency of the evidence to support his conviction under section 19.02(b)(2). We conclude that the evidence is legally sufficient to support a finding of the essential elements of murder. We overrule appellant's first issue.

**B. Sufficiency of the Evidence to Support a Negative Finding Against Appellant's Claim of Self-defense**

In his second issue, appellant contends that the evidence is insufficient to support a finding against appellant beyond a reasonable doubt on the issue of self-defense.

Self-defense is a defense to prosecution under Penal Code section 2.03. *See* Tex. Penal Code § 9.31. A person may use force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). The use of deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id*. § 9.32. A "reasonable belief" is one that would be held by "an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3).

The initial burden to produce evidence supporting self-defense rests with the defendant. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Saxton*, 804 S.W.2d at 913. This burden of persuasion does not require that the State produce evidence, but it does require that the State prove its case beyond a reasonable doubt. *Id*. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Id*. at 913–14. If the jury finds the defendant guilty, then it

9

implicitly finds against the defensive theory. *Id*. at 914.

Appellant contends that Lee approached him and began striking him on the head and chest. According to appellant, Lee was always the aggressor and appellant only used his knife after demanding Lee stop the attack. Additionally, appellant urges that his small stature relative to Lee affirmatively casts reasonable doubt on the State's case against self-defense.

Appellant's testimony alone does not conclusively prove self-defense as a matter of law. *See Saxton*, 804 S.W.2d at 914; *Hull v. State*, 871 S.W.2d 786, 789 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Because the jury is the sole judge of credibility and weight to be given the testimony, the jury was not obligated to believe appellant's account that complainant was the first aggressor. *See Saxton*, 804 S.W.2d at 914.

The record contains evidence that contradicts appellant's claim of self-defense. Emergency medical records showed that, when the paramedics arrived, appellant did not complain that he had been struck by Lee. Similarly, Officer Gabler testified that he observed no marks or injuries other than the bandage on appellant's thumb. When Gabler asked appellant if he was injured, appellant replied that only his thumb was hurt. Moreover, the jury was not shown evidence to justify appellant's use of deadly force in response to Lee's alleged assault. Other than appellant's account that Lee was "pounding" on appellant's head and chest, which other testimony contradicts, no record evidence established that appellant's use of deadly force was in response to Lee's attempted use of deadly force. *See* § 9.32(a)(2)(A).

Considering all the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have rejected appellant's self-defense claim. *See Saxton*, 804 S.W.2d at 914. We overrule appellant's second issue. *Id*.

10

## II. Legal Sufficiency of the Evidence to Support the Assessment of Court Costs in the Judgment

In his third issue, appellant asserts that the assessment of court costs in the trial court's judgment is not supported by sufficient evidence. As part of its judgment, entered November 5, 2012, the trial court assessed costs of $234 to be paid by appellant. The original clerk's record filed with this court contains a computer screen printout from the Harris County Justice Information Management System (JIMS) which reflects the assessment of $234 in costs. On December 10, 2012, the JIMS printout was signed by a deputy clerk and stamped with the seal of the Harris County District Clerk, certifying the printout as a true and correct copy of the original. Appellant objects to this JIMS computer screen printout, asserting there is no evidence to support that it was part of the original record before the trial court, and, therefore, it is no evidence to support the imposition of court costs.

The Court of Criminal Appeals recently rejected appellant's argument, determining that, for the trial court to properly order a criminal defendant to pay a specific amount of costs, there need not have been evidence in the record before the trial court at the time of its judgment that supports the assessment of this amount of court costs. *See Johnson v. State*, 423 S.W.3d 385, 390, 392–94 (Tex. Crim. App. 2014). Because court costs are not part of the defendant's guilt or sentence and need not be proven at trial, courts should review the assessment of costs to determine if there is a basis for the costs, not to determine if there is sufficient evidence to support the assessment of costs. *See id.* at 389–90. The Court of Criminal Appeals also held that a JIMS printout substantially similar to the printout in the original clerk's record in this case was a proper bill of costs that supported the trial court's assessment of costs. *See id.* at 392–94. Under the *Johnson* precedent, either the JIMS printout or the Criminal Bill of Costs provides a sufficient basis for the trial court's assessment of court costs. *See id.* at 392–96.

11

Absent a challenge to a specific cost or the basis for the assessment of that cost, a bill of costs is sufficient. *See id*. at 396.

Appellant further urges that his constitutional right to due process has been violated if he is deprived of an opportunity to be heard in the trial court regarding the propriety of these costs. This argument lacks merit under precedent from the Court of Criminal Appeals. *See Cardenas v. State*, 423 S.W.3d 396, 398–99 (Tex. Crim. App. 2014); *Johnson*, 423 S.W.3d at 391–92. Criminal defendants have constructive notice of the mandatory-cost statutes. *Cardenas*, 423 S.W.3d at 398–99. The procedures outlined in *Johnson* provide defendants with notice and an opportunity to be heard because: (1) appellants do not have to preserve error in the trial court; (2) appellants may challenge the assessment of court costs on direct appeal; and (3) appellants may also challenge the assessment of court costs by a motion under article 103.008. *See* Tex. Code Crim. Proc. art. 103.008; *Cardenas*, 423 S.W.3d at 399; *Johnson*, 423 S.W.3d at 391–92. Thus, appellant's due process right has been satisfied with respect to notice and an opportunity to be heard regarding the assessment of court costs. *See Cardenas*, 423 S.W.3d at 399; *Johnson*, 423 S.W.3d at 391–92. We overrule appellant's third issue.

Having overruled appellant's three issues, we affirm the trial court's judgment.


/s/    Ken Wise
       Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).